UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

JOSEPH F. DUGAN
Plaintiff

V. No. -05-399S

NATIONAL RAILROAD PASSENGER CORPORATION
(AMTRAK)
Defendant

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment based on the attached memorandum, affidavit and statement of uncontested facts. He contends that there are no material facts in dispute and he is entitled to a judgment as a matter of law.

Wherefore, Plaintiff moves this motion be granted with costs and attorneys fees.

Joseph F. Dugan, #1388
Plaintiff
183 Lyndon Road
Cranston, RI 02905
401-781-3573
Fax 401-944-4161

CERTIFICATE

I certify a copy of the foregoing was personally delivered to Paul E. Dwyer, Esq, Edwards & Angel , LLP on November 22 2005 at 2800 Financial Plaza Providence, RI 02903-2499.

Joseph F. Dugan, Esq

**Request for Oral Argument**

**Plaintiff requests an oral argument because he believes it necessary given the somewhat unique questions presented.**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

JOSEPH F. DUGAN
Plaintiff

V. No. -05-399S

NATIONAL RAILROAD PASSENGER CORPORATION

(AMTRAK)

Defendant

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I. STATEMENT OF FACTS

Plaintiff in his November 24, 2004 letter (1) assented to a restated version of Plaintiff's original FOIA request of September 9, 2004. Medaris Oliveri's letter of November 16, 2004 summarizes the restatement (2). Oliveri's November 16 letter also recited that Plaintiff would pay the sum of $250.00 towards costs of producing the requested information and he would be advised if the cost exceeded $ 500.00.A check for $ 250.00 was submitted to AMTRAK with the November 24 letter.

Dugan had prior correspondence with both The U.S. Department of Transportation and AMTRAK beginning in June of 2004 concerning the obtaining of records, however, for the purposes of this case Plaintiff agrees with AMTRAK that Dugan's request was finalized upon AMTRAK'S receipt of Dugan's November 24 , 2004 letter assenting to the November 16 restatement and his check for $250.00.

Dugan's FOIA request summarized in AMTRAK's November 16 letter and consented to by Dugan on November 24 was as follows

1. The names of parties docket numbers and courts involved wherein AMTRAK has been sued for injuries by persons who claim the doors of one its passenger cars have closed on them causing injuries for the past five 5 years on the Northeast corridor from Boston to Washington, D.C.

2.. Any internal memo's or studies concerning the problems of passenger doors closing on persons and causing injuries for the past 5 years.

3.. All complaints by passengers and AMTRAK'S responses to them in last 5 years concerning failure to notify them that the train was leaving the Providence, RI station without sufficient notice and not providing time to exit.

4. Any documents which address the duties of conductors to be on the platform prior to or at the time of the train's departure for the past 5 years.

AMTRAK pursuant to 5 USCA 552(a)(6) (A) was required to notify Plaintiff within 20 days of November 24, 2005 that it would not comply with all or part of Plaintiff's request for documents. Since AMTRAK made no reply within 20 days or invoked no exception contained in 49 CFR Sect.701.7 Plaintiff presumed AMTRAK intended to produce the documents and that any delay was relayed to the logistics of production. For that reason Plaintiff did not avidly pursue AMTRAK for its failure to promptly respond.

On April 28, 2005 (3) Plaintiff wrote AMTRAK reminding them they had not complied. There was no response.

On June 13, 2005 Plaintiff wrote AMTRAK again (4). This time he threatened court action.

Around June 13, 2005 Plaintiff received his first contact from AMTRAK. since November 16 of 2004. Medaris Oliveri called and identified herself as the FOIA Officer at AMTRAK. She stated the information requested was almost assembled and would be sent two weeks hence. Oliveri did not state that any of the information would not be produced. Plaintiff assumed it was all going to be produced.

A week or more after June 13 Dugan received another phone call from Oliveri. She asked if references in request #1 should be limited to injuries to passengers rather than to all persons. Plaintiff said yes. He also agreed that "carrybys" should be excluded from request # 3. Oliveri summarized these changes in a letter of June 28. (5). Dugan confirmed this by E-mail on July 1, 2005.

On July 19, 2005 Oliveri sent another letter ( 6) stating that Dugan's September 9, 2004 original request was now considered perfected on July 1, 2005 because of" numerous revisions".The July 19th letter also asked for an additional $250.00 which was sent.

There were not numerous revisions after November 24, 2004. There was no contact between November 24, 2004 the finalization of Dugan's request and roughly mid June of 2005 other than Dugan's letters of April 28. 2005 and June 13, 2005 wanting to know when he would get the information. There was a phone call in June of 2005 by Oliveri to Dugan where Dugan agreed non-passengers and carryby's could be dropped from the request. This was the only

revision between November 24, 2004 and the partial denial of his request on July 29, 2005.

On July 29, 2005 eight months after receiving Plaintiff's request AMTRAK finally sent its response.( 7 The letter )( 8 The documents). As to request # 1 AMTRAK stated there were five court cases. They listed the name of the courts where they were sued but refused to give the names of the parties and the docket numbers of the cases. The information is useless without the docket numbers. The reason stated was the mind boggling contention that the release of this clearly public information would violate Section 6 of the FOIA which prohibits the release of clearly personal information of individuals.

AMTRAK in response to # 2 requesting studies and memos regarding closing doors stated they had none.

In response to # 3 AMTRAK listed the complaints made by passengers but refused to reveal the names or addresses of the complainers on the grounds they also were privileged under Section 6 of the Act.

In response to # 4 seeking documents controlling the activities of conductors on platforms AMTAK has produced the documents but has redacted much of the information. Further in the letter of July 29 Oliveri states that because of the small changes which Plaintiff agreed to in June of 2005 to his original request, ie " passengers" rather than "persons" and "no carrybys" which discussion of she initiated, his request is deemed to have been "perfected" on July 1, 2005 rather than on November 24, 2004. This deemed "perfection" ruse is referred to in the July 19th letter in which she tries to make her seven month late response timely. The use of the word "perfection" to validate a clearly late response which no way effects AMTRAK'S decision not to produce is clear evidence of AMTRAK'S bad faith in this matter.

Finally, the July 29 letter misstates facts. Oliveri claims that the check for the additional $250.00 was in Dugan's June 13 letter. In fact the June 13[th] letter was a letter from Dugan to AMTRAK threatening suit because he had not heard from AMTRAK since November of 2004. In the next sentence Olvieri makes this clear by admitting she did not ask for the additional $250.00 until July 19.

Plaintiff filed a timely appeal of Oliveri's decision(9)

In his appeal in addition to challenging the decision Plaintiff complains that AMTRAK'S response is in clear violation of the 20 day rule. He further contends that the amount of money charged: $500.00, is unreasonably high for such a simple request.

The Appeals Officer fully upheld Oliveri's decision.( 10 ). She also rejected Plaintiff's claim the AMTRAK'S response was untimely and the cost was unreasonable. In response to Plaintiff's complaint of AMTRAK'S untimely response the Appeals Officer stated that Oliveri stayed in touch. No facts are cited for the statement Oliveri stayed in touch. Of course she did not" stay in touch" unless responding to a request in November of 2004 in June of 2005 is" staying in touch".

Plaintiff filed a timely appeal in this court.

## II. ARGUMENT

### 1. Plaintiff's Request for the Names and Docket Numbers of Cases Should be Granted.

Plaintiff is an attorney representing Susan Taylor a resident of Barrington, RI who was injured by AMTRAK'S doors closing on her in Providence in September of 2003. The attorney wishes to determine whether a claim against AMTRAK is warranted.(Affidavit of Joseph F. Dugan)

On November 24, 2004 Dugan's request for information under the FOIA was finalized by his agreement to the November 16, 2004 letter from Oliveri and payment of $250.00. AMTRAK does not challenge this contention. Plaintiff further contends in his statement of uncontested facts that he wrote to AMTRAK in April of 2005, but that there was no response by AMTRAK until sometime in June of 2005 when he received a call from Oliveri.

Dugan in his statement of uncontested facts states that in a phone call of June 2005 he agreed to eliminate non-passengers from request #1 and "carrybys" from request # 3 seeking complaints of no notice of a train leaving the station.

On July 29, 2005 Oliveri made her response. She provided the names of the courts where suits had been filed, but refused to provide the names and numbers of court cases effectively preventing Plaintiff finding the cases. She further refused to give the names or addresses of those who had made complaints about trains leaving the Providence Station without notice. Manuals relating to conductors's responsibilities on the platform were produced, but about half of the information was redacted.

Finally Oliveri states in her July 29 letter that because" non-passengers" and carryby's were eliminated from the two requests the Dugan's FOIA request would be viewed as "perfected" on June 29 2005 rather than on November 24, 2004. It should be noted Plaintiff did not agree this" perfection"would restart the time limits to respond. Finally, leaving non-passengers and carrybys in the request would in no way have changed AMTRAK'S response.

The Hearing Officer's decision of September 9, 2005 does not address the issue of" perfection" ,on June 29, 2005, but simply states that Oliveri kept in regular contact with Dugan which was not true. The hearing officer found the costs were reasonable without citing any facts. Oliveri's denial was fully upheld.

AMTRAK's position is that file names and docket numbers of cases filed in the Federal District Court in Philadelphia and the courts of Common Pleas in Philadelphia and the Superior Court of Mercer County New Jersey are protected by Section 6 of the FOIA which has been held to prevent an unwarranted intrusion of privacy. AMTRAK does not consider the docket number itself privileged, but that its revelation allegedly could lead to exposure of the individual name.(10, Decision p. 2)

The Hearing Officer agrees that the court numbers and files are public records which were created by the parties filing suit, but analogizes court filings to listings in a telephone book or voter's lists which of itself does not place a name in the public domain.

The goal of the FOIA is to open agencies to public scrutiny. **Dept of the Air Force v. Rose 425 U.S. 352, 372 ( 1976)**. Exemptions are narrowly construed. **Id, 361**. AMTRAK is a government agency for the purposes of the act. **49 U.S.C.A. Section 24301 (e)**. The government carries the burden of proving the applicability of an exception. **Department of State v. Ray 502 U.S. 164, 173 (1991).**

The burden of proof is on AMTRAK and it is a heavy one. **Dept of Air Force v. Rose, supra**.

The "decision" does not deny that a court file number is a public document, but notes that exemption 6 of the FOIA **5 U.S.C.A. 552 Section (b)(6)** which exempts personnel and medical files from disclosure prevents the court file number's revelation because it could reveal a party's name and a party presumably has a substantial interest in protecting his privacy" ( 10, Decision p 4)

The hearing Officer cites **U.S. Dept of State v. Washington Post Co. 456 U.S. 595 (1982)** involving the names of Iranian students who could have faced death for the proposition that the nature of the information sought not whether the information comes out of a personnel file or medical file, but whether it comes from a "similar file" controls whether it is privileged.

Plaintiff does not contest this proposition, but suggests that revealing a court case file number is not the type of" similar file" contemplated by exemption 6 nor is it an "unwarranted invasion of privacy" protected by the F)IA.

AMTRAK in its refusal letter of July 29, 2005 and its "decision"claims that revealing the docket number "could" lead to exposure of the Plaintiff's identity, address and other information. A court case file would typically contain the name and address of the attorney who filed suit, but not the address of the Plaintiff or information other than the Plaintiff's name. Other information might be available depending on whether there has been discovery and it is in the file.

Courts are reluctant to bar access to information which simply "might" result in the revelation of private information through the internet or some indirect source. They note that with today's technology anything can be discovered and the purpose of the act will be thwarted if the court accepts daisy chain arguments. In **Dayton Newspapers v. Dept of the Air Force 107 F. Supp 2d 912 (SD Ohio 2003)** the agency was required to provide the amounts of settled malpractice claims even though the amounts could be used to identify individuals. **In Dayton Newspapers v. Dept of Veteran's Affairs 257 F. Supp 2d 988 (SD Ohio 2003)** cited in the" decision" the court would not compel the revelation of Plaintiff's names, but refused to bar the name of the judge or the attorney who filed the lawsuit both of which could lead to the Plaintiff's names as being too "attenuated"

The U.S. Supreme Court in **Rose, supra, 378** rejects the withholding of information because it "might" lead to revelation of a person's identity as too extreme an extension of exemption 6

The Plaintiff contends, however, denying access to a person's name is too extreme an extension of Section 6 of the act unless there has been substantial expectation of privacy. **Dept Air Force v. Rose, supra.** If information is known or parties have part of the information a name may lose any protection. **National Western Life Ins Co. V. U.S. 512 F. Supp 454 (ND Texas 1980 ).** Simply allowing a name to be revealed has been viewed as a insubstantial invasion of privacy unless there could be "consequences" such as for the Iranian students in **Washington Post, supra. See Officers Ass v. Rumsfield 428 F. Supp 454 (DDC 1977)**

If a privacy interest exists it must be weighed against the public interest in disclosure. **Ripskis v. Dept of Housing and Urban Development 241 U.S. App D.C. 746 F. 2d 1.** Only if the invasion of privacy is clearly unwarranted should the public interest in disclosure not prevail. **U.S. Dept of State v. Ray, supra.** The public nature of the information itself may be reason to conclude that there is no "unwarranted invasion of privacy" **Washington Post, supra.**

What enormous privacy interest does a Plaintiff who filed a court action have that not only prevents release of his name as Plaintiff , but a number assigned by the court? Little.

He chose to file suit and knew if he did so his name would appear with a court number. Further he knew that when he filed suit he probably would have to reveal personal information. Following the Defendant's logic no government agency need reveal the name of any court case. An agency response to a FOIA request for the name and number of a court case using AMTRAK'S logic would be to simply provide the name of the court and deny the court number and name of the party. This ludicrous position hardly comports with the Supreme Court's sentiment in **Dept of Interior v. Klamath Water Users Protective Ass 532 U,.S. 121(2000)**

where the court stated disclosure not secrecy is the dominant objective of the FAIA and exemptions are to be given narrow compass.

**In U.S. Dept of Justice v. Tax Analysts 492 U.S. 136 ( 1989 )** the court held that U.S. Court decisions in the agency's possession were "agency records" for the purpose of the act and hence must be produced. It is assumed that each of the decisions had a name and a court number. However, the government never even made the argument that the opinions were privileged because they contained a case name and number.

In **Norwood v. FAA 993 F. 2d 570 (cir 6 1993)** the court stating only " unwarranted invasions of privacy" were prohibited allowed discovery of many documents regarding air traffic controllers which would probably lead to their identification to be released.

The FOIA bars" unwarranted invasions of privacy. If providing a court number is an invasion of privacy it is a minimal one and should be given little protection. **Retired Officers Ass. V. Dept of the Navy 716 F. Supp 662 (DDC 1998)** holding the releasing of officers names and addresses to an officer association was a de minimus invasion of privacy.

The standard of an unwarranted invasion of privacy is high for the government.. It is higher than the standard for the FOIA exception protecting investigation files **Fine v. Dept of Energy 823 F. Supp 888 (DNM 1993).**

The" decision " then proceeds to the "balancing test"to determine if the privacy invasion is "unwarranted"

The "decision " asserts that there is no public interest in disclosure since the information sought has no bearing on AMTRAK'S performance of its statutory duties. AMTRAK has a statutory duty to run a railroad safely and like all railroads is subject to the supervision of the Federal Railroad Administration. It receives a federal subsidy.

Plaintiff in his affidavit states that he represents a person injured by a closing train door on the train's leaving the station. The complaints listed in response to request #3 indicate there are problems with AMTRAK trains leaving the station without notice. Plaintiff's interest is more than idle curiosity, but involves railroad safety. Court cases brought involving the issue of closing passenger doors may add further information to what appears a problem.

Public safety has generally been recognized as valid reason for some invasion of some privacy. **Norwood, supra.** The fact that information is demanded by a litigant or a potential litigant is not a bar if its disclosure would serve the public interest. **Columbia Packing Co. V. U.S. Dept of Agriculture 563 F. 2d 495 ( cir 1, 1977)** It is an irrelevant factor ,Id, 499.

Finally, the court is asked to take judicial notice that court records state and local are open unless ordered sealed. 28 USCA Sect. 1914 and the Judicial Conference controls federal practice.

Plaintiff is entitled to the names and docket numbers of the court cases requested. If not the names than only the docket numbers. The invasion of privacy is minimal. There are no countervailing factors.

2. **Plaintiff is Entitled to Names of Passengers Who Have Made Complaints About Trains leaving the Providence Station Without Sufficient Notice and Time to Exit**

AMTRAK contends that it can withhold the names and other information about people who complained the train left Providence station without notice. A review of the three documents produced reveals only one of them, the letter to " Customer Relations" making complaints about service on 10-14 and 16-04 which clearly contains a customer's name. The court needs to review the other two complaints and advise counsel if there is a name. For the purpose of this memo Plaintiff will assume there is a name on the other two documents.

**Lakin Law Firm v. FTC 352 F. 3d 1122 (cir 7, 2003)** cited by AMTRAK for the proposition that the names and addresses of person's making complaints to government regulatory agencies are exempt overturns a lower court decision allowing such discovery. However, the appeals court implies that if the information was being sought from an entity in the position of the companies who are complained about rather than a regulatory agency it would be a closer case. AMTRAK is being complained about and is regulated by The Federal Railroad Administration.

It is AMTRAK'S safety practices which are being complained about and Plaintiff suggests that a balancing test would suggest that the public safety would be enhanced by allowing discovery of any names and addresses.

Further it is not true that the names of letter writers to government entities are always exempt without a particularized assertion of the affected individuals expectations. **Landmark Legal Foundation v. IRS 87. Supp. 2d 21,( DDC 2000) affirmed 267 F3d 1132(cir DC 2001).**

Whether the writer's names should be released depends on balancing their interest in privacy against the public's interest in safe rail travel. The customer complaints identified by AMTRAK are consistent with the problem experienced by Plaintiff's client Taylor when she was injured. It will promote public safety to release this information. **See Sheet Metal Workers, Intern. Ass Local No. 19 v. Department of Veteran's Affairs 940 F. Supp 712 (ED Pa 1995).**

3.. **Plaintiff is Entitled to the Redacted Portion of the Manuals**

Plaintiff delivered 5 manuals which supposedly addresses duties of the conductors on the platform before and to or at the time of the train's departure.

Plaintiff is unable to determine whether AMTRAK has fully answered his request since about one half of everything in the manuals is redacted. Given the hard nosed attitude taken by AMTRAK on the other issues Plaintiff has reason to believe that anything not precisely within Plaintiff's request has been redacted. For example the request seeks information prior to or at the time of departure. There may be duties described within the period after the train's arrival, but before departure which is in the general ambit of the request , but perhaps is being withheld.

The court must review the case "de novo" and the Plaintiff relies on the court's judgment in this matter.

**4. The amount of $500.00 is excessive and AMTRAK was Seven Months Late is Responding**

Given the little information requested, produced, copied the amount of $500.00 is clearly excessive and meant to discourage FOIA requests. The court should also find AMTRAK was seven months late in responding.

III. STANDARD OF REVIEW

The court is directed to conduct a "de novo" review of the administrative decision of the agency. 5 USCA Sect. 552 (a)(4)(B). **Detroit Free Press, Inc v. Dept of Justice 73 F.3d. 93 (cir 6, 1996).**

All the cases by cited by Plaintiff and those reviewed ,but not cited were considered by the respective courts under Rule 56 in that they are a review of a administrative decision and there is generally no genuine and material question of fact. Plaintiff suggests that at present there appears to be no material questions of fact other than perhaps those which bear on issues of attorneys fees and costs.

IV. PLAINTIFF IS ENTITLED TO ATTORNEYS FEES AND COSTS

Pursuant to 5 USCA 552 Sect (a)(4)(E) a party who substantially prevails is entitled to reasonable attorneys fees and litigation costs. The first circuit court of appeals held in **Aronson v. Department of Housing and Urban Development 866 F. 2d 1, (cir 1, 1989)** that a pro se attorney is not entitled to attorneys fees in a FOIA case. However, Plaintiff alleges and will prove that although the suit was in his name he was acting as Ms Taylor's agent. Dugan was made Plaintiff for the purpose of convenience and to prevent the case from being dismissed because Ms Taylor was not a party in interest having not made a demand upon the agency.

If the court should rule in the Plaintiff's favor he will request the court for permission to address the issues of attorneys fees and costs.

## V. CONCLUSION

The court should hear this matter on summary judgment and rule in favor of the Plaintiff. If the court grants summary judgment for the Plaintiff than Plaintiff should be allowed to be heard on the issue of attorneys fees.

Joseph F. Dugan, #1388
Plaintiff
183 Lyndon Road
Cranston, RI 02905
401-781-3573
Fax 401-944-4161

## CERTIFICATE

I certify a copy of the foregoing was personally delivered to Paul E. Dwyer, Esq, Edwards & Angel , LLP on November 22 ,2005 at 2800 Financial Plaza Providence, RI 02903-2499.

Joseph F. Dugan, Esq