UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSEPH F. DUGAN,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>Defendant. | Civil Action No.<br><br>1:05-CV-00399-S-DLM |

**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant National Railroad Passenger Corporation ("Amtrak"), by and through its undersigned counsel, respectfully submits this Opposition to Plaintiff Joseph F. Dugan's ("Plaintiff" or "Dugan") Motion for Summary Judgment and this Cross-Motion for Summary Judgment. Amtrak respectfully requests that Plaintiff's Motion be denied, that his Complaint be dismissed with prejudice, and that the Court find that Plaintiff is not entitled to an award of attorney's fees. Amtrak also requests that its Cross-Motion for Summary Judgment be granted in its entirety.

Plaintiff filed a Freedom of Information Act ("FOIA") request with Amtrak in which he sought certain information. While Amtrak released some of the information Plaintiff requested, it withheld other information that is exempt from disclosure under FOIA. Plaintiff now seeks that properly withheld information. Plaintiff's FOIA request also sought certain information contained in Amtrak operating and personnel manuals. Amtrak produced all portions of those manuals that were responsive to Plaintiff's request, and redacted those portions that were non-

responsive. Plaintiff now seeks the redacted information that was not included in his FOIA request. Finally, Plaintiff also improperly seeks attorney's fees related to the filing of this action. As a *pro se* plaintiff, even were he to prevail, Plaintiff is not entitled to an award of attorney's fees.

In support of this Opposition and Cross-Motion, Amtrak relies upon the attached arguments and authorities set forth in the accompanying Memorandum of Law, Rule 12.1 Statement of Undisputed Facts, Declarations of Lori Ann Vendetti and Medaris Oliveri, and all attachments and exhibits to each.[1]

Date: December 21, 2005

By: ________________________

Paul E. Dwyer, Jr., Esq., (RI Bar #3956)
EDWARDS ANGELL PALMER &
DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200 (telephone)
(202) 585-6600 (fax)
PDwyer@eapdlaw.com

Counsel for Defendant National Railroad
Passenger Corporation

Of Counsel:

Stephen L. Neal, Jr., Esq.
Kathleen Benway, Esq.
MANATT PHELPS & PHILLIPS, LLP
700 12th Street, Suite 1100
Washington, DC 20005-4075
(202) 585-6500 (telephone)
(202) 585-6600 (fax)
sneal@manatt.com
kbenway@manatt.com

Counsel for Defendant National Railroad
Passenger Corporation

[1] As this action is an administrative appeal of an agency action, the entire record may be considered by the Court and the page limitation for exhibits does not apply. *See Amended General Order #2002-01 of the United States District Court, District of Rhode Island.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2005, I caused the foregoing Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment, the accompanying Memorandum of Law, Defendant's Rule 12. 1 Statement of Undisputed Facts, the Declarations of Lori Ann Vendetti and Medaris Oliveri, and Proposed Order to be served via First Class, United States mail, postage prepaid, as follows:

Joseph F. Dugan, Esq.
183 Lydon Road
Cranston, RI 02905

Paul E. Dwyer, Jr.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **JOSEPH F. DUGAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NATIONAL RAILROAD PASSENGER CORPORATION,**<br><br>**Defendant.** | **Civil Action No.**<br><br>**1:05-CV-00399-S-DLM** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. SUMMARY OF THE ARGUMENT

This action stems from Plaintiff Joseph F. Dugan's ("Plaintiff" or "Dugan") request to Defendant National Railroad Passenger Corporation ("Amtrak") for information pursuant to the Freedom of Information Act ("FOIA"). Through the introduction of irrelevant facts, Plaintiff attempts to obfuscate the only issue at hand: whether Amtrak has complied with its statutory duty of disclosure under FOIA. Even accepting Plaintiff's version of the facts as true, Plaintiff has received all information responsive to his FOIA request to which he is entitled.

Plaintiff, a personal injury attorney, sought four categories of information in his FOIA request for the five-year period from 1999 through 2004: (1) the names of plaintiffs, docket numbers, and courts where cases had been filed against Amtrak by passengers allegedly injured on trains traveling between the Boston, MA and Washington, D.C. portion of the Northeast Corridor by a closing exterior passenger door; (2) internal memos and studies concerning

problems of exterior passenger doors closing on persons on trains operating between Boston, MA and New York, NY;[2] (3) the names of passengers who had complained to Amtrak about trains leaving the Providence, RI station without sufficient notice and adequate time to exit; and (4) documents that address the duties of conductors to be on the platform prior to or at the time of a trains departure for trains operating between Boston, MA and New York, NY.

Amtrak produced all of the requested information responsive to Plaintiff's requests, except for that information that is not subject to disclosure under FOIA. The only thing Dugan now seeks by his lawsuit and Motion for Summary Judgment is that properly withheld information, which consists of redacted, non-responsive, portions of internal documents and policy manuals that are entirely outside the scope of Plaintiff's request, as well as the names of parties to and/or docket numbers of complaints against Amtrak which are exempt from disclosure under FOIA.

Plaintiff is not entitled under FOIA to anything more than he already has received. Plaintiff filed his original FOIA request with Amtrak, and subsequent Complaint with this Court, in order to gain access to information to use for his personal financial gain. In his affidavit and Motion, Plaintiff admits that he seeks the information in his FOIA request on behalf of a client who allegedly sustained injuries in September 2003. Plaintiff has yet to file a Complaint in any court on this client's behalf, although in May 2004, Plaintiff made a $250,000.00 monetary demand upon Amtrak. In correspondence with Amtrak that predated Plaintiff's FOIA request, Plaintiff urged Amtrak to meet his settlement demand and suggested that, should he be forced to move forward with a formal lawsuit, he would publicly seek the exact information that is the

---

[2] Amtrak had no documents responsive to Request No. 2 and Plaintiff concedes that this second request is not a subject of this litigation.

subject of his current FOIA request. As such, Plaintiff's FOIA request was made in an effort to obtain information to bolster his client's demand against Amtrak. Rather than using the FOIA statute for its intended purpose -- ***to contribute significantly to the public understanding of the operations or activities of the government*** -- Plaintiff instead is attempting to use the statute as a means for obtaining "free discovery" without affording Amtrak the protections offered a defendant under the Federal Rules of Civil Procedure. This is improper and an abuse of the FOIA statute.

Finally, Plaintiff, a *pro se* litigant, has requested attorney's fees associated with the prosecution of this action. While under limited circumstances FOIA gives the court discretion to award attorney's fees to a prevailing plaintiff, Mr. Dugan clearly is not entitled to such fees. Plaintiff filed both his original FOIA request and this action as a *pro se* litigant. It is well-settled under FOIA that a *pro se* litigant, even when he or she is a licensed attorney, is not entitled to an award of attorney's fees. There is no dispute that Mr. Dugan filed the original FOIA request on his own behalf, and he filed this case after unsuccessfully appealing Amtrak's denial of certain information in that request. His last-minute claim that he was acting as the "agent of his client" is both irrelevant and disingenuous. Therefore, even if Plaintiff were to prevail, he is not entitled to an award of attorney's fees.

## II. ARGUMENT

### A. Summary Of The Relevant Facts

In September 2004, Plaintiff filed his FOIA request with Amtrak.[3] After extensive communications between Plaintiff and Amtrak regarding modifications to the scope of the request, Plaintiff's request was perfected on July 1, 2005. *Def.'s Stmt. of Fact*, ¶¶ 5-15.

---

[3] *Statement of Undisputed Facts in Support of its Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Def.'s Stmt. of Facts")*, ¶ 4.

Plaintiff's perfected FOIA Request sought the following records for the five-year time period 1999 through 2004:

- The names of parties, docket numbers, and courts wherein Amtrak has been sued for injuries by passengers traveling on the Boston to Washington segment of the Northeast Corridor (NEC) who claimed that an exterior passenger car door closed on them, causing injuries. ("Request No. 1").

- Any internal memos or studies concerning problems of exterior passenger doors closing on persons on trains operating between Boston and New York, causing injuries. ("Request No. 2").

- All complaints by passengers and Amtrak's responses concerning failure to notify passengers that a train was leaving the Providence, Rhode Island Station without sufficient notice and not providing time to exit. ("Request No. 3")

- Any document that addresses the duties of conductors to be on the platform prior to or at the time of the train's departure for trains operating between Boston and New York. ("Request No. 4.").

*Def.'s Stmt. of Facts,* ¶ 15.

In response to Request No. 1, Amtrak released the names of the courts in which it had been sued, but withheld the names of plaintiffs and docket numbers of cases because disclosure of that information would lead to a "clearly unwarranted invasion of personal privacy" of those individuals under 5 U.S.C. § 552(b)(6) ("Exemption 6").[4] *Id.*, ¶ 17. In response to Request No. 3, Amtrak provided the text of two verbal complaints and one written complaint, but redacted the

[4] Plaintiff mischaracterizes Amtrak's reason for withholding court docket numbers, stating "AMTRAK does not consider the docket number itself privileged, but that its revelation allegedly could lead to the exposure of the individual's name." *Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem. ")*, p. 7. To the contrary, Amtrak has not asserted that a "privilege" attached to either the passenger names or the docket numbers at issue. Instead, it has clearly and consistently stated that both the names of individuals and the docket numbers that would readily identify those individuals were withheld under Exemption 6 as a clearly unwarranted invasion of privacy. *See Declaration of Medaris Oliveri, ("Oliveri Decl. ")* Exs. 11, 13.

names and other personal identifying information associated with each complaint, again as an unwarranted invasion of the complainants' personal privacy under Exemption 6. *Id.* In response to Request No. 4, Amtrak produced all of the information that fell within the scope of that request, but redacted as non-responsive portions of any produced pages that fell outside of the FOIA request. *Id.*

Pursuant to 49 C.F.R. § 701.10, Plaintiff appealed the withholding of the specified information to Amtrak's General Counsel, who considered and then denied Plaintiff's appeal. *Def.'s Stmt. of Facts*, ¶¶ 18-19.

Pursuant to 5 U.S.C. § 552(a)(4)(B), Plaintiff filed the instant action seeking review of Amtrak's decision by this Court. *Id.*, ¶ 18; *see Detroit Free Press v. Department of Justice,* 73 F.3d 93, 95 (6th Cir. 1996) ("A district court reviews de novo an agency's decision regarding a FOIA request"). The parties agree that the issue in dispute in this action -- whether Amtrak met its statutory obligation in providing information to Plaintiff under the FOIA -- is ripe for resolution on summary judgment. There are no material facts in dispute[5] and no discovery needs to be taken.

**B. Standards Governing Summary Judgment**

Summary judgment is appropriate when the moving party demonstrates that there are no "genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); Fed R. Cir. P. 56. "To prevail on a motion for summary judgment in FOIA litigation, the target agency must show that each identifiable document is wholly exempt from FOIA's inspection requirements." *Hydron Laboratories, Inc. v. E.P. A.*, 560 F. Supp. 718, 721 (D.R.I. 1983). As demonstrated below,

5 Although the parties disagree about the date that Plaintiff's FOIA request was "perfected", this is not a ***material*** factual dispute.

Amtrak has met this standard and needs to protect the individuals at issue in Request Nos. 1 and 3 of Plaintiff's FOIA Request from "unwarranted invasion[s] of personal privacy." 5 U.S.C. § 552(b)(6). Moreover, Amtrak is not required to produce information that was not part of Plaintiff's FOIA request.

### C. Amtrak Properly Withheld Information From Request Nos. 1 And 3 Pursuant To FOIA, Exemption 6

#### 1. Exemption 6 Of FOIA Seeks To Balance Public And Private Interests

In enacting FOIA, Congress sought to "open agency action to the light of public scrutiny." *Department of Air Force v. Rose,* 425 U.S. 352, 372 (1976). "The [Freedom of Information] Act is broadly conceived, it seeks to permit access to official information long shielded unnecessarily from public view and attempts to . . . provid[e] a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." *Id.* at 361-62. Congress recognized that while the general philosophy of FOIA is full agency disclosure, agencies have a legitimate interest in protecting certain categories of information within their possession. *Id.* at 360-61. FOIA identifies nine categories of information that are exempt from disclosure in response to FOIA requests. *See* 5 U.S.C. § 552(b)(1) – (b)(9). Among those identified exemptions in the one at issue in this case, "Exemption 6." *See* 5 U.S.C. § 552(b)(6).

In creating Exemption 6, Congress sought "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act." *Rose,* 426 U.S. at 372. FOIA exempts from public disclosure under Exemption 6, "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6). The Supreme Court broadly interpreted the meaning of "similar files" to "include any information which applies to a particular individual,"

regardless of the type of file in which it is contained. *United States Dept. of State v. Washington Post Co.,* 456 U.S. 595, 600 (1982). "Exemption 6 [is] to be applied to 'any Government records on an individual which can be identified as applying to that individual.'" *Abraham & Rose, PLC v. United States*, 138 F.3d 1075, 1083 (6th Cir. 1998) (citing *Heights Community Congress v. Veterans Admin.*, 732 F.2d 526, 528 (6th Cir. 1984), *cert. denied*, 469 U.S. 1034 (1984) (quoting *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601-02 (1982)).

Once it is established that the information sought is a "personnel, medical or [a] similar file," a court must next determine whether release of the requested information would constitute a "clearly unwarranted invasion of personal privacy." *Washington Post Co.,* 456 U.S. at 602. This decision is determined by balancing the privacy interest in non-disclosure against the public interest in disclosure of the requested information. *Rose,* 425 U.S. at 372-73 ("The limitation of a 'clearly unwarranted invasion of personal privacy' provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information . . ."). The balancing process under Exemption 6 requires an assessment of the privacy interests at issue, the public benefit, the nature of the information sought in the FOIA request, and the use to which the requested information could be put if disclosed to any member of the public. *Painting Indus. of Hawaii Mkt. Recovery Fund v. U.S. Dept. of the Air Force*, 26 F.3d 1479, 1482 (9th Cir. 1994). "[A]n agency may delete identifying details within a document, provided that the details sought to be deleted are reasonably segregable and the overall privacy interests of the individual clearly outweigh the presumption of public disclosure." *Avondale Indus., Inc. v. N.L.R.B.,* 90 F.3d 955, 959 (5th Cir. 1996).

The Supreme Court has narrowly defined the "public interest" at stake under Exemption 6. *See Dept. of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 495 (1994). "The only

relevant 'public interest in disclosure'" is "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding ***of the operations or activities of the government.***'" *Id.* (emphasis added). The benefit to the public must flow directly from disclosure, as "[m]ere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy." *U.S. Dept. of State v. Ray,* 502 U.S. 164, 179 (1991).

**2. <u>No Public Interest Would Be Served By Release Of The Names And Docket Numbers Of Cases Withheld From Requests No. 1 And 3</u>**

Amtrak properly withheld information from its response to Request. Nos. 1 and 3 on the basis of Exemption 6, concluding that the public interest in Dugan's ability to obtain the names of complainants (Request No. 3), and the names and docket numbers of passengers who filed cases against Amtrak (Request No. 1), did not outweigh the individuals' interests in maintaining their personal privacy. *Oliveri Decl.*, Exs. 11, 13. Indeed, until he filed his Motion for Summary Judgment, Plaintiff had never previously articulated any public interest that would be served by disclosing to him the information Amtrak withheld under Exemption 6. Plaintiff now, for the first time, specifies the alleged "public interest" in obtaining that information:

> Plaintiff is an attorney representing Susan Taylor, a resident of Barrington, Rhode Island who was injured by AMTRAK's doors closing on her in Providence in September of 2003. The attorney wishes to determine whether a claim against Amtrak is warranted. *Pl. Mem.*, at p. 6.[6]

---

[6] Plaintiff also, in passing references, notes that release of the withheld plaintiff names and court docket numbers will promote "railroad safety." He does not, however, elaborate on how the release of this information will accomplish that purpose. *See Pl. Mem.* at 12, 14; *Columbia Packing Co. v. Dept. of Agriculture*, 563 F.2d 495, 499 (1st Cir. 1977) ("To the extent that the [stated public benefit] is just a restatement of Columbia's private interest to enlarge discovery, we think the asserted 'public interests' are unrelated to FOIA's purpose of 'informing the public about agency action'"). Similarly, Plaintiff's stated public benefit of "railroad safety" is just a restatement of his private interest to obtain information which he can use to bolster his client's demand against Amtrak.

Prior to making this statement, Plaintiff's interest in this information was decidedly private. In May 2004, before he filed his FOIA request, Plaintiff made a $250,000.00 monetary demand on Amtrak on behalf of Susan Taylor. *See Declaration of Lori Ann Vendetti ("Vendetti Decl."), Ex. 1.* Plaintiff had not then, and still has not, filed a complaint in any court on her behalf. In correspondence with Amtrak prior to making his FOIA request, Plaintiff urged Amtrak to meet his demand and noted that should he be forced to move forward with a formal lawsuit, he would publicly seek the exact information that is now the subject of his FOIA request. *Vendetti Decl., Exhibits. 2-3.* Plaintiff's FOIA request is no more than an effort to obtain information to use as leverage and bolster his client's monetary demand against Amtrak. Rather than using the FOIA statute for its intended purpose – to contribute significantly to the public understanding of the operations or activities of the government -- Plaintiff is improperly using the statute as a means to obtain "free discovery." In doing so, Plaintiff is attempting to bypass the need to file and sustain a Complaint and to deny Amtrak the protections offered a defendant under the Federal Rules of Civil Procedure. It is well-settled that FOIA was not enacted for the benefit of private litigants such as Plaintiff. *New England Med. Center Hosp. v. N.L.R.B.,* 548 F.2d 377, 383 (1st Cir. 1976) ("The thrust of FOIA is to provide public information, not benefit to private litigants"); *Columbia Packing Co., Inc. v. U.S. Dept. of Agriculture,* 417 F. Supp. 651, 655 (D. Mass. 1976) ("FOIA is not intended to be an administrative discovery statute for the benefit of private parties"). Indeed, no public benefit would be served by releasing the requested information to Plaintiff because it would not

contribute significantly to the public understanding of the operations and activities of the government.[7] Accordingly, Plaintiff's FOIA request is an abuse of the FOIA statute.[8]

### 3. **The Individuals' Privacy Interests Clearly Outweigh Plaintiff's Claim Of Public Benefit**

The information Amtrak withheld from its response to Plaintiff's Request Nos. 1 and 3 falls squarely within the ambit and the balancing of Exemption 6 protections. *See Washington Post Co.*, 456 U.S. at 602 ("[E]xemption [6] was intended to cover detailed government records on an individual which can be identified as applying to that individual."); *Abraham & Rose, PLC*, 138 F.3d at 1083 (citing *U.S. Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 500 (1994)) ("A clear privacy interest exists with respect to such information as names, addresses, and other identifying information, ***even if such information is already available on publicly recorded filings.***") (emphasis added).

While release of the information withheld from Request Nos. 1 and 3 would provide no public benefit, the privacy interest at stake is quite high. Plaintiff seeks the release of: (1) the names of individual complainants' to Amtrak; and (2) the names of individuals who have sued Amtrak and court docket numbers that would provide a direct link to them. Numerous courts have held that disclosure of similar types of personal information would constitute an unwarranted invasion of privacy. *See, e.g., U. S. Dept. of Justice v. Reporters Comm.,* 489 U.S.

---

7 Plaintiff relies on *Columbia Packing Co. v. U.S. Dept. of Agriculture*, 563 F.2d 495 (1st Cir. 1979) to support his contention that "information demanded by a litigant or potential litigant is not a bar [to disclosure] if its disclosure would serve the public interest." *Pl. Mem.,* p. 12. Defendant does not argue with this contention, but in this case, the ***only*** benefit that would be served by the release of the information at issue would be Plaintiff's own, not the public's. *See* 563 F.2d at 499.

8 Even if one were to assume that the purpose for Plaintiff's FOIA request, -- "determining whether a claim against Amtrak [on behalf of Susan Taylor] is warranted" -- was legitimate, release of the names of other unrelated passengers and court docket numbers would not inform that determination.

749, 794 (1989) (refusing to require disclosure of individual's "rap sheet", stating that the fact that "an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information."); *U.S. Dept. of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487 (1994) (privacy interest of bargaining unit employees in nondisclosure of their home addresses); *U.S. Dept. of State v. Ray*, 502 U.S. 164, 164 (1991) (significant privacy interests in maintaining confidentiality of names found); *Painting and Drywall Work Pres. Fund v. Dept. of Housing and Urban Dev.*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) ("the attenuated public interest in disclosure does not outweigh the construction workers' privacy interest [in their names and addresses]"); *Carter v. U.S. Dept. of Commerce* 830 F.2d 388, 391-392 (D.C. Cir. 1987) (names, addresses and other "personal identifying information" was properly withheld because "release would cause a palpable threat to privacy.")

These cases make clear that the personal information sought by Plaintiff would constitute an unwarranted invasion of privacy.

### 4. <u>Amtrak Properly Balanced The Privacy Interests In Refusing To Release The Names Of Plaintiffs And Complainants From Requests No. 1 And 3</u>

Plaintiff's claim that by filing a court action an individual automatically forfeits any privacy interests in the disclosure of personal information is incorrect. *Pl. Mem. at pp. 10-11.* Plaintiff cites no case law for this proposition, because the governing law is to the contrary. Indeed, the Supreme Court recognizes that, "an individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *Federal Labor Relations Auth.*, 510 U.S. at 500 (refusing to require disclosure under FOIA of individuals' home addresses, even though such information was publicly available through sources such as a telephone directory);

*see also Reporters Comm.,* 489 U.S. at 763. ("the fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information."). Lower courts have similarly found that "a clear privacy interest exists with respect to such information as names, addresses and other identifying information ***even if such information is already available on publicly available filings.***" *Abraham & Rose, PLC*, 138 F.3d at 1083 (emphasis added) . Like the case at bar "[I]f otherwise private information can be obtained through a search of court records, so be it; such a fact does not mean [an agency] is obligated to relinquish its own duty of protecting private information within its possession . . . . [T]he fact that such records are readily available does not mean that they have lost all traits of privacy, or that the government has no duty to protect private information." *Dayton Newspapers, Inc. v. Dept. of Veteran Affairs*, 257 F. Supp. 2d 988, 1010 (S.D. OH 2003).

Moreover, the privacy interest of those individuals who complained to Amtrak (as opposed to filing an action in court) is arguably even greater. Because they had not instituted a formal action, those who wrote or called Amtrak to complain would have even less reason to anticipate that their names and other personally identifiable information would be released to a private personal injury attorney. *See Lakin Law Firm v. Federal Trade Comm'n.*, 352 F.3d 1122 (7th Cir. 2003) ("When people feel so strongly about something that they actually complain about it to a federal agency, they probably think their names and addresses will not be released to a firm of private lawyers seeking fuel to propel a possible class-action lawsuit."). As in this case, "there is no reason to believe that the public will obtain a better understanding of the working of various agencies by learning the identities of . . . private citizens who wrote to government officials." *Voinche v. FBI,* 940 F. Supp. 323, 330 (D.D.C. 1996); *Lakin Law Firm,* 352 F.3d at 1125 (finding that the core purposes of FOIA would not be served by the release of the names

and addresses of persons who filed complaints with the FTC); *Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 297 (D.D.C. 2005) ("Providing personal identifying information commonly found in constituent letters does not advance the purposes of FOIA and, as such, may be withheld from FOIA requests.")[9].

### 5. Amtrak Properly Balanced The Privacy Interests In Refusing To Release Docket Numbers From Request No. 1

While Plaintiff agrees that individuals' names can be an appropriate subject of Exemption 6, he contends that court docket numbers are not and that courts are reluctant to bar access to information which "might" result in revelation of private information. *Pl. Mem.*, pp. 8-11. Court docket numbers, however, provide a ***direct link*** to the identity of the individual at issue, not the "daisy chain" to which Plaintiff alludes. Moreover, the cases cited by Plaintiff do not support his argument, as the information released in those cases -- settlement figures of malpractice claims and names of claimants' attorneys -- would "raise a mere possibility of identification" by a "diligent researcher," not the direct link to the identity of individuals that a court docket number provides. *Dayton Newspapers, Inc.*, 257 F. Supp. 2d at 1003-04 (finding name of medical malpractice claimants' attorneys releasable under FOIA because the "claimant has no privacy interest in the name of his attorney", and disclosure of that information would be "insufficient to directly identify a[] claimant"); (*Dayton Newspapers, Inc. v. Dept. of the Air Force*, 107 F. Supp.

---

9 Plaintiff's argument that the release of the personal identifying information will "promote public safety," and that "public safety would be enhanced by allowing discovery of names and addresses" begs for an explanation as to how that is so. *Pl. Mem.*, p. 13. Plaintiff curiously relies on *Sheet Metal Workers v. Dept. of Veteran's Affairs,* 940 F. Supp. 712 (E.D.Pa. 1995) for the proposition that complainant names should be released in order to promote public safety. *Id., p. 14*. However, that case is inapposite. The *Sheet Metal Workers'* court considered the privacy interest in construction workers' names and wages against the public's interest in ensuring that workers were being compensated in accordance with provisions of the Davis-Bacon Act. *Id.* It does not speak at all to public safety.

2d 912, 919 (S.D. OH 1999) (finding type of injuries and settlement figures in medical malpractice claims releasable under FOIA because that information would not readily lead to the discovery of the identity of claimants, but names, social security numbers, addresses, phone numbers and places of employment were properly withheld under Exemption 6 as release of that information would interfere with individuals' personal privacy).

### 6. <u>The Cases Relied Upon By Plaintiff Do Not Support The Release Of Information Withheld From Requests No. 1 And 3</u>

Each of the cases relied upon by Plaintiff in support of his claim that the information withheld from Amtrak's response to Request Nos. 1 and 3 is distinguishable from the facts of this case. Unlike this case, in all of the cases that Plaintiff relies upon: (1) the benefit to the public equaled or outweighed the privacy interest at stake; or (2) the documents at issue were not withheld pursuant to Exemption 6. *See U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136 (1989) (government did not claim the withheld documents were subject to Exemption 6, but rather that the documents at issue did not constitute "agency records" within the meaning of FOIA.); *Columbia Packing Company v. U.S. Dept. of Agriculture*, 563 F.2d 495 (public interest in disclosure of employee records due to illegal activities of inspectors resulting in their bribery conviction outweighed the privacy interest of nondisclosure); *Retired Officers Ass'n. v. Dept. of the Navy*, 716 F. Supp. 662, 667 (D.D.C. 1989) (names and addresses of retiring military officers released to plaintiff because "retired officers, their families, and Congress are all benefited by plaintiff's lobbying efforts and the services that it provides to retired officers and their spouses.").[10] Moreover, in those cases where courts did order the release of an individual's

[10] Surprisingly, Plaintiff also relies on *Norwood v. F. A. A.*, 993 F.2d 570, 575 (6th Cir. 1993) in support of this proposition, despite the fact that the *Norwood* court actually upheld the FAA's

personal information, the courts did not find that individuals had no privacy interest they simply found that under the specific facts of those cases, the benefit to the public outweighed that privacy interest. *Id.* Thus, even if this Court concludes that there is only a modest privacy interest at stake in the disclosure of the names and docket numbers withheld from Request No. 1, it "need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time." *National Ass'n. of Retired Fed. Employees v. Horner,* 879 F.2d 873, 880 (D.C. Cir. 1987) (finding no public interest in the release of names and addresses of government retirees to a retiree membership organization).

**D. Amtrak Properly Redacted Information That Was Not Responsive To Request No. 4**

Under FOIA, a requestor is not entitled to information that he did not request. *In re Church of Scientology Flag Serv. Org./FOIA Lit.*, MDL Docket No. 892. 1993 U.S. Dist. LEXIS 18946, *10 (M.D. Fla. May 18, 1993) (affirming IRS decision to withhold documents or portions of documents that were "not within the scope of Plaintiff's requests" where "the materials [were] not within the description of documents contained within Plaintiff's FOIA requests"). In Request No. 4, Plaintiff seeks "[a]ny document that addresses the duties of conductors to be on the platform prior to or at the time of the train's departure for trains operating between Boston and New York." Amtrak conducted an exhaustive search of its voluminous internal policy and procedure manuals to identify the universe of information that was responsive to Request No. 4. *Oliveri Decl.*, ¶ 28. Amtrak produced to Plaintiff all the information that fell within the scope of Request No. 4. *Id.* Amtrak's policy and procedure manuals related to onboard services contain a myriad of information on a variety of subjects matters, from accounting procedures, public

---

decision to withhold requested information, including names and other personally identifying information, as an unwarranted invasion of privacy under Exemption 6.

health issues, to uniform and grooming standards, the vast majority of which are entirely unrelated to Request No. 4. *Id.* Amtrak thus properly withheld and/or redacted non-responsive portions of the documents it did produce. Plaintiff's statement that he "has reason to believe that anything not precisely within [his] request has been redacted" (*Pl. Mem.*, p. 14), is pure speculation and irrelevant. Amtrak is under no obligation to provide information to Plaintiff that was not part of his request. Amtrak has properly produced all information that is responsive to Request No. 4 and Plaintiff has received all information he is entitled to under the law. *Id.*, and Exs. 11, 13; *Def.'s Stmt. of Facts,* at ¶ 17.

**E. <u>The Amount Charged To Plaintiff To Process Plaintiff's FOIA Request Was Reasonable</u>**

Plaintiff contends that Amtrak's response to his FOIA request was untimely and that he was overcharged for processing the request. *Pl. Mem.*, at 5. These allegations are not only meritless, but they are entirely immaterial to the only issue before the court – whether Amtrak properly responded to Plaintiff's FOIA request. Moreover, while more than eight months passed between the time that Plaintiff submitted his original FOIA request and the time he received Amtrak's final response, Plaintiff's request underwent numerous revisions and was not "perfected" until July 1, 2005. *Def.'s Stmt. of Facts,* at ¶ 15. Plaintiff received a response to that finalized request within 30 days of the date his request was finalized. *Id.*, at 17. Even if Amtrak's response to Plaintiff's request was not made as soon as he might like, that fact is irrelevant to whether Amtrak complied with its statutory duty of disclosure under FOIA.

Similarly the $500.00 Plaintiff was charged for costs incurred in responding to his FOIA request was more than reasonable. As described more fully in the *Oliveri Declaration*, Plaintiff's request required Amtrak to undertake an extensive search in order to locate all of the documents that were potentially responsive to his request. *Oliveri Decl.*, at ¶¶ 19-28. This

search involved reviewing numerous hard copy records and documents, as well as queries to Amtrak databases, the results of which had to then be reviewed manually to identify responsive information. *Id.* Amtrak's search involved Amtrak's Claims, Central Reporting, Police, Safety, Operations, and Customer Relations Departments located in Amtrak's Washington, D.C.; Wilmington, DE; Boston, MA; and New York, NY offices. *Id.*, at ¶¶ 22-28.

Indeed, based on the rates Amtrak charges for processing FOIA request, which are set forth in Amtrak's FOIA regulations (49 CFR 701.11), the actual charge for processing Plaintiff's request exceeded $1,000.00. *Oliveri Decl.*, at ¶ 29. As Plaintiff had agreed to pay up to $500.00 in processing fees, Amtrak generously agreed to waive all processing fees in excess of that amount. *Def.'s Stmt. of Facts,* at ¶ 15. Thus, Plaintiff's contention that he was overcharged for his FOIA request is meritless.

**F. Plaintiff Is Not Entitled To Attorney's Fees**

Finally, Plaintiff, a *pro se* litigant, has requested attorney fees associated with prosecuting this action. *Plaintiff's Memorandum*, p. 15. Under limited circumstances, FOIA does allow a court discretion to award reasonable attorney's fees in cases . . . "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Even assuming that Plaintiff were to substantially prevail, however, the law is clear that *pro se* litigants in FOIA cases such as Mr. Dugan are **not** entitled to attorney's fees, even where the complainant is an attorney. *See Aronson v. U.S. Dept. of Housing and Urban Dev.*, 866 F.2d 1, 5 (1st Cir. 1989) ("[W]e see no good reason for treating *pro se* lawyers any differently than *pro se* lay persons"); *Crooker v. E.P.A.*, 763 F.2d 16, 17 (1st Cir. 1985) ("we have held that a *pro se* litigant cannot recover attorney's fees under the attorney's fee provision of the FOIA.").

There is no dispute that Dugan filed the original FOIA request on his own behalf, and he filed this case after unsuccessfully appealing Amtrak's denial of that request. His last-minute

claim that he was acting as the "agent of his client", Susan Taylor, is irrelevant and disingenuous. *See Pl.'s Mem.*, p. 15. Plaintiff could not have, and did not, file this action as Ms. Taylor's agent. As he admits, Ms. Taylor has no standing to bring this action, or to file this instant motion, since she did not make the original FOIA request. *Id.*; *McDonnell v. U. S.*, 4 F. 3d 1227, 1236- 37 (3rd Cir. 1993). ("A person whose name does not appear on a request for records has not made a formal request for documents within the meaning of [FOIA]. Such a person, ***regardless of his or her personal interest in disclosure of the requested documents***, has no right to receive either the documents, or notice of an agency decision to withhold the documents.") (emphasis added); *id.* at 1237 ("[A] person . . . whose name does not appear on a FOIA request for records may not sue in district court when an agency refuses to release requested documents because he has not administratively asserted a right to receive them in the first place"). Plaintiff filed his original FOIA request in September of 2004 on behalf of himself. *Oliveri Decl.*, Ex. 1. In none of his subsequent correspondence with Amtrak, including the appeal of Amtrak's response to his request and his Complaint filed in this action, did Plaintiff assert, or even mention, that he sought the information on behalf of any client. *See, e.g., Oliveri Decl.*, Exs. 1, 3, 5, 8, 10, and 12.

Plaintiff cites no case law in support of his request for attorney's fees, because there is no support for it. Plaintiff is the only "claimant" in this case and even if he "substantially prevailed" in this action, he is not entitled to an award of attorney fees.

## III. <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied, Amtrak's Cross-Motion for Summary Judgment should be granted, Plaintiff's Complaint

should be dismissed with prejudice, and his request for attorney's fees should be denied in its entirety.

Respectfully submitted,

EDWARDS ANGELL PALMER & DODGE LLP

Date: December 21, 2005

By: /s/ Paul E. Dwyer, Jr.

Paul E. Dwyer, Jr., Esq., (RI Bar #3956)
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200 (telephone)
(202) 585-6600 (fax)
PDwyer@eapdlaw.com

Counsel for Defendant National Railroad Passenger Corporation

Of Counsel:

Stephen L. Neal, Jr., Esq.
Kathleen Benway, Esq.
MANATT PHELPS & PHILLIPS, LLP
700 12th Street, Suite 1100
Washington, DC 20005-4075
(202) 585-6500 (telephone)
(202) 585-6600 (fax)
sneal@manatt.com
kbenway@manatt.com

Counsel for Defendant National Railroad Passenger Corporation

30183553.1