**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JOSEPH F. DUGAN,** | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| **v.** | ) | **1:05-CV-00399-S-DLM** |
| **NATIONAL RAILROAD PASSENGER CORPORATION,** | ) | |
| **Defendants.** | ) | |

**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S LOCAL R. 12.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

The undisputed facts of this case are as follows:

1. On or about June 2, 2004, by letter dated May 25, 2004, the National Passenger Railroad Corporation ("Amtrak") Passenger Claims Unit received a letter from Plaintiff Joseph F. Dugan ("Plaintiff" or "Dugan") demanding $225,000 on behalf of Susan L. Taylor for injuries alleged to have had occurred on September 23, 2003, while she was attempting to depart an Amtrak train (the "Demand Letter"). Declaration of Lori Ann Vendetti ("Vendetti Decl."), Exhibit 1.

2. By letter dated August 12, 2004, in seeking a response to the Demand Letter, Plaintiff notified Amtrak that "the problem of AMTRAK trains lurching out of Providence Station without notice to passengers and lack of a crew presence . . . is surely something you must be aware of and which I would investigate through court discovery." Vendetti Decl., Exhibit 2.

3. By letter dated September 7, 2004, in seeking a response to the Demand Letter, Plaintiff notified Amtrak that "I surmise that your office has received complaints about Amtrak's practice of taking off without notice and without assigning conductors to a platform . . . I am prepared to take this case to court if necessary. So perhaps before you deny Taylor's claim you should check with the appropriate people at Amtrak to see if there have been other complaints." Vendetti Decl., Exhibit, 3.

4. On September 9, 2004, Plaintiff, on behalf of himself, requested information from Amtrak under the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552 *et seq.* Declaration of

Medaris Oliveri ("Oliveri Decl."), Exhibit 1.

5. Amtrak's FOIA Officer responded to Plaintiff's request on September 20, 2004, by notifying Plaintiff that his request, as then structured, would require that "Amtrak contact field offices across the country" and "would require extensive search time." She notified Plaintiff that he would be charged $38.00 per hour by Amtrak for search and review and $0.25 per page for reproduction costs. She also notified Plaintiff that the anticipated costs associated with responding to his request would exceed $1,000.00. The FOIA Officer also suggested that if Plaintiff placed temporal or geographic limits on his request, the cost of processing the request would be less. Oliveri Decl., Exhibit 2.

6. By letter dated October 4, 2004, Plaintiff notified Amtrak's FOIA Officer that he wished to modify his initial FOIA request. Plaintiff also agreed to pay up to $500 for the costs associated with processing his request, and requested a specific estimate "if the bill will exceed this amount." Oliveri Decl., Exhibit 3.

7. By letter dated November 16, 2004, the Amtrak FOIA Officer again contacted Plaintiff seeking further clarification of Plaintiff's FOIA request. She also requested that Plaintiff pay an advance deposit of $250 towards the costs associated with processing his request. Oliveri Decl., Exhibit 4.

8. By letter dated November 24, 2004, Plaintiff responded to Amtrak's request for clarification, and tendered the requested $250.00 advance deposit. Oliveri Decl., Exhibit 5.

9. During the period from November 2004, through June 2005, Amtrak conducted the research necessary to respond to Plaintiff's FOIA request. Oliveri Decl. at ¶¶ 19-28. The search for responsive records involved Amtrak's Claims, Central Reporting, Police, Safety, Operations, Mechanical, Transportation, Service Standards, and Customer Relations Departments located at Amtrak's Washington, D.C.; Philadelphia, PA, Wilmington, DE; Boston, MA; and New York, NY offices. *Id.*, at ¶¶ 22-26. The search involved reviewing numerous hard copy records and documents, as well as the results of queries of the Claims, Customer Relations, and Safety Information System databases. *Id.*, at ¶¶ 26-28. The results of these queries had to then be reviewed manually and electronically to identify responsive information. *Id.*, ¶ 27. A comprehensive review of Amtrak's policy and procedure manuals related to onboard services also was conducted. *Id.,* at ¶ 28.

10. On June 22, 2005, the FOIA Officer notified Plaintiff by telephone and email of a question related to one of Plaintiff's FOIA requests, and sought clarification of that request. Oliveri Decl., ¶ 10 and Exhibit 6.

12. By letter dated June 28, 2005, the FOIA Officer set forth her understanding of Plaintiff's amended FOIA request, based on the various telephone calls and correspondence with Plaintiff. The FOIA Officer sought Plaintiff's confirmation that the letter accurately reflected his amended request. Oliveri Decl., Exhibit 7.

13. On July 1, 2005, Plaintiff confirmed, via email, that the FOIA Officer's letter "accurately reflects my amended request." Oliveri Decl., Exhibit 8.

14. In a subsequent telephone conversation, Mr. Dugan was again advised that it was likely that processing fees would exceed $1,000. He voiced objection, stating that he had committed to paying only $500. Oliveri Decl. at ¶ 13.

15. By letter dated July 19, 2005, the FOIA Officer notified Plaintiff that Amtrak considered Plaintiff's FOIA request perfected on July 1, 2005. The letter set forth Plaintiff's perfected FOIA request to which Amtrak would provide responsive, non-exempt information for the 1999 through 2004 time period as described below:

- The names of parties, docket numbers, and courts wherein Amtrak has been sued for injuries by passengers traveling on the Boston to Washington segment of the Northeast Corridor (NEC) who claimed that an exterior passenger car door closed on them, causing injuries. ("Request 1").

- Any internal memos or studies concerning problems of exterior passenger doors closing on persons on trains operation between Boston and New York, causing injuries. ("Request 2").

- All complaints by passengers and Amtrak's responses to them concerning failure to notify passengers that a train was leaving the Providence, Rhode Island Station without sufficient notice and not providing time to exit. ("Request 3").

- Any document that addresses the duties of conductors to be on the platform prior to or at the time of the train's departure for trains operating between Boston and New York. ("Request 4").

The FOIA Officer also notified Plaintiff that fees associated with processing Plaintiff's request had exceeded $500.00, but because Plaintiff had earlier agreed to pay fees of up to $500.00, fees in excess of $500 would be waived. The FOIA Officer notified Plaintiff that as Plaintiff had already tendered an advance deposit of $250.00 towards fees, upon receipt of the additional $250.00 from Plaintiff, Amtrak would release *responsive, non exempt records.* (emphasis added). Oliveri Decl., Exhibit 9.

16. On July 27, 2005, Amtrak received Plaintiff's letter dated June 13, 2005 (sic), enclosing a check dated July 21, 2005 endorsed to Amtrak. Oliveri Decl., Exhibit 10.

17. By letter dated July 29, 2005, Amtrak responded to Plaintiff's perfected FOIA request. Amtrak released all records in its possession that were responsive and not exempt from disclosure. The FOIA Officer withheld the names of complainants, plaintiffs, and docket numbers that were responsive to Plaintiff's Request Nos. 1 and 3 because they were exempt from disclosure under FOIA Exemption 6. Plaintiff also withheld information contained in onboard services policy and procedure manuals that was beyond the scope of Plaintiff's FOIA request. Oliveri Decl., Exhibit 11.

18. On August 3, 2005, Plaintiff filed an appeal of Amtrak's July 29, 2005 response.

Oliveri Decl., Exhibit 12.

19. By letter dated September 9, 2005, Amtrak denied Plaintiff's appeal and upheld the FOIA Officer's July 29, 2005 decision to withhold the above-described information. Oliveri Decl., Exhibit 13.

20. On September 20, 2005, Plaintiff filed the instant action in this Court.

21. Amtrak denies Plaintiff's contention in Paragraph 4 of Plaintiff's Statement of Material Facts that Plaintiff's FOIA request was finalized when Amtrak received Plaintiff's Letter of November 24, 2004. *See* Answer and Affirmative and/or Special Defenses of Amtrak, at ¶ 4; *See also* ¶¶ 4-16, above. This fact is both disputed and immaterial. Because of the numerous clarifications and revisions to Plaintiff's original FOIA request, Plaintiff's request was not perfected until July 1, 2005. *Id.*

Date: December 21, 2005

By: Paul E. Dwyer

Paul E. Dwyer, Jr., Esq., (RI Bar #3956)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200 (telephone)
(202) 585-6600 (fax)
PDwyer@eapdlaw.com

Counsel for Defendant National Railroad Passenger Corporation

Of Counsel

Stephen L. Neal, Jr., Esq.
Kathleen Benway, Esq.
MANATT PHELPS & PHILLIPS, LLP
700 12th Street, Suite 1100
Washington, DC 20005-4075
(202) 585-6500 (telephone)
(202) 585-6600 (fax)
sneal@manatt.com
kbenway@manatt.com

Counsel for Defendant National Railroad Passenger Corporation

30183505.1